UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WIPRO LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 19-12063-JGD |
| ANALOG DEVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT CONCERNING CONTRACT INTERPRETATION**

March 18, 2021

DEIN, U.S.M.J.

**I. INTRODUCTION**

On or about February 14, 2014 the plaintiff, Wipro Limited ("Wipro"), entered into a Master Professional Services Agreement ("MPSA") with the defendant, Analog Devices, Inc. ("ADI"). MPSA § 2(a) provides that the scope of the services to be provided will be described in separate Statements of Work, and on May 18, 2017, the parties executed a Statement of Work ("SOW") related to the joint development of an HDMI 2.1 Transceiver ASIC known as "Swordfish" (the "Work"). Complaint (Docket No. 1) ¶¶ 9-10.[1] The MPSA provides in § 13 for termination both for cause and without cause (*i.e.*, for "convenience") while the SOW only addresses termination for convenience. SOW § 20.2.1. The parties' rights and obligations differ

---

[1] Copies of the MPSA and the SOW were submitted to the court under seal at Docket No. 43-4. The provisions quoted herein have been disclosed by the parties in unsealed pleadings.

based on the type of termination, with payments due to Wipro if the termination is for convenience, but not if it is for cause.

It is undisputed that the Work was not completed.  By letter dated December 20, 2018, ADI purported to terminate the parties' contractual arrangement for cause.  Compl. ¶ 13.  Wipro responded that the SOW's termination provisions superseded those found in the MPSA, and that ADI did not have the right to terminate for cause.  ADI, on the other hand, contended that the two agreements must be read together, and that ADI retained the right to terminate the parties' contracts for cause, as detailed in the MPSA.  Wipro subsequently brought this action alleging that ADI breached the MPSA and the SOW, and that ADI owes it the payments defined in the SOW for a termination for convenience.

This matter is presently before the court on ADI's Motion for Partial Summary Judgment (Docket No. 40), pursuant to which ADI seeks a determination as to "whether the agreements governing the technology development project at issue in this litigation allowed termination for breach."[2]  Motion at 1.  The parties agree that the language of both the MPSA and the SOW are clear and unambiguous, although they disagree as to the agreements' meaning.  After careful consideration of the parties' oral and written arguments, this court concludes that the termination provisions of the MPSA and the SOW must be read together, and that the parties retained the right to terminate a SOW for cause.  Therefore, and for the reasons detailed herein, ADI's motion for partial summary judgment is ALLOWED.

---

[2] Nothing herein addresses whether either party breached their agreements, and the court expresses no opinion on that issue.  The sole issue considered here is whether either party had the right, under the agreements, to terminate the agreements for cause.

## II. STATEMENT OF FACTS

Unless otherwise indicated, the following facts are undisputed.

### The Relationship between the MPSA and the SOW

On February 14, 2014, Wipro (as the "Service Provider") and ADI signed the MPSA. Compl. ¶ 9; see MPSA. As described in the "Cover Sheet" to the MPSA:

> This Agreement establishes a contractual framework for Service Provider's provision of Services and Deliverables to [ADI] .... Where an Analog Affiliate and Service Provider enter into a Statement of Work, *such Statement of Work together with the terms of this Agreement shall constitute a separate contract* for the applicable Services and/or Deliverables.

MPSA Cover Sheet (emphasis added). Thus, the MPSA and the SOW are to be read together, and together "constitute the sole and exclusive statement of the terms and conditions" of the parties' agreement. MPSA § 15(c).

Specifically, the MPSA provides that the MPSA establishes the "contractual framework" and that "[e]ach Statement of Work will define the specific Services authorized by [ADI], . . . the specifications and requirements ('Specifications'), means of delivery, applicable rates and charges, and other appropriate terms and conditions for the Services." MPSA § 2(b). As detailed in the MPSA, performance by the Service Provider (Wipro) was required to be "in conformity with the applicable Specifications, the Statement of Work, this Agreement, and all applicable standards and laws." Id. The MPSA includes general provisions applicable to all Statements of Work such as the need for the Service Provider to keep records and remain subject to audit (MPSA § 8); the warranties of the Service Provider "[e]xcept as may be otherwise expressly stated in a Statement of Work" (MPSA § 9); the Service Provider's indemnification obligations and the limits of the parties' liability to each other. MPSA §§ 10-12.

[3]

The "General Terms and Conditions" of the MPSA include the Service Provider's status as an independent contractor, a choice of law provision, the binding effect of the MPSA, notice requirements and the prohibition against the assignment of the contract.  MPSA § 15.  The agreement also provides, under the General Terms and Conditions section, that "[e]ach Statement of Work will be governed by the terms and conditions of [the MPSA], provided that *in the event of any conflict* between [the MPSA] and a [SOW], the provisions of the [SOW] will prevail."  MPSA § 15(b) (emphasis added).  An issue in the instant motion is whether the termination provisions in the MPSA and the SOW "conflict" so that the SOW termination provision is exclusive.

Termination Provisions of the MPSA

The "Term and Termination" provision of the MPSA provides that "[e]ach Statement of Work will remain in effect until the work authorized under the Statement of Work is completed *or the Statement of Work is terminated earlier as provided in this Agreement.*"  MPSA § 13(b) (emphasis added)).   The MPSA details two ways in which a relationship between ADI and a Service Provider may be terminated: with or without cause.  Thus, the MPSA provides that ADI may terminate the MPSA or "any Statement of Work without cause on 45 days written notice[,]" at which time ADI would have payment obligations "for completed milestones and for uncompleted milestone on a percentage-of-completion basis."  MPSA § 13(c).  This provision expressly recognizes that "[t]he number of days of notice for termination without cause for a specific Statement of Work can be modified by mutual agreement between the parties in that Statement of Work[,]" and that the payment obligations detailed in the MPSA govern "unless otherwise stated in the applicable Statement of Work."  Id.

[4]

The "for cause" termination provision detailed in the MPSA applies to "either party" and allows for termination of "*this Agreement* upon notice" if the other party has filed for bankruptcy, becomes insolvent or "engages in acts, inaction or conduct which the other Party deems injurious to the interests or reputation of itself[.]"  MPSA § 13(d)(i-iii) (emphasis added). In addition, either party may terminate "this Agreement upon notice" if

> the other Party *commits a material breach* of the [MPSA] *or Statement of Work* and fails to cure such default to the non-defaulting Party's reasonable satisfaction within thirty (30) days after receipt of notice.  The number of days for the cure period for a specific Statement of Work *can by modified by mutual agreement between the parties in that Statement of Work.*  For the avoidance of doubt, non or late payment of fees which are not subject to a bona fide dispute shall constitute a material breach of this Agreement.

MPSA at § 13(d)(iv) (emphasis added).  An issue in this litigation is whether this provision survives the execution of the SOW and, if it does, whether ADI could terminate the SOW, or just the MPSA, for a material breach.

### The SOW

As noted above, on May 18, 2017, more than three years after executing the MPSA, the parties executed a SOW for the Work.  The SOW expressly incorporates the terms of the MPSA dated February 14, 2014 and sets forth the specifications for the Work to be completed by Wipro.  See SOW § 1.  The SOW contemplated that the project would start on June 1, 2017 and would be completed by May 31, 2019.  Id.  Wipro was to be paid as particular milestones were met within specified times.  SOW § 20.1.1.  The SOW also details per unit royalty payments after the production of the transceiver.  SOW § 20.1.2.

The SOW provides, in § 20.2.1, for "Termination; Effect of Early Termination."  That section provides in relevant part as follows:

> *The termination provisions of this SOW overrule any other section in this SOW or Agreement.*
>
> a) ADI may terminate this SOW *for convenience* upon a 90 Day Notice to Wipro. If such termination occurs prior to Production Release, Wipro is eligible for a minimum payment accrued based on the termination payout schedule below for services rendered from the effective date of the SOW, until the effective date of termination of this SOW. . . .
>
> For Example, . . .
>
> If SWORDFISH ASIC development is unable to achieve Production Release milestone by T0+33 months *due to a cause not attributable to Wipro*, or due to any material changes to the Consumer Product business roadmap that materially and adversely affects the production and sale of SWORDFISH ASIC, *then ADI would pay Wipro the applicable early termination charges as defined in table above*.

SOW § 20.2.1 (emphasis added).

The Parties' Dispute

Work began under the SOW on or about May 18, 2017.  Compl. ¶ 11.  Wipro contends that ADI requested additional work beyond the scope of the SOW, which it accommodated to its detriment, as the additional work caused delays in the completion of the SOW and caused Wipro to miss the milestones in the SOW.  Id.  ADI denies making demands outside the scope of the SOW, asserting that any additional work was covered by a separate statement of work. Def. Ans. to Complaint (Docket No. 31) ("Def. Ans.") ¶ 17.  ADI instead contends that delays in the Swordfish project were due to Wipro's own "failure to adequately staff and manage the project."  Id. ¶¶ 18-27.

On December 21, 2018, ADI communicated to Wipro that "ADI considers Wipro to be in breach of the SOW for failure to meet the stated milestones on time or within budget."  Def. Mem. Supporting Partial Summary Judgment (Docket 41) ("Def. Mem.") at 4 (quoting email from Jennifer Lloyd to Anita Ganti (Dec. 21, 2018) (Docket 43, Ex. C)); Def. Ans. ¶ 33.  Wipro

claimed that the SOW required a 90-day notice period prior to contract termination and subsequently submitted to ADI a final invoice in the amount of $6,950,000, the amount allegedly owed to Wipro in accordance with the termination provisions of the SOW.  Compl. ¶ 13.  It is Wipro's contention that ADI is only permitted to terminate their arrangement under the convenience termination provision of the SOW, and that the termination for cause provision of the MPSA is of no force and effect.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS

#### A.  Standard of Review

Summary judgment is warranted when the moving party shows, based upon the discovery and other materials in the record, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In the instant case, the parties agree that the MPSA and the SOW are the relevant documents, and that the terms of the agreements are clear and unambiguous, although they disagree as to their meaning.  See Nicolaci v. Anapol, 387 F.3d 21, 26 (1st Cir.2004) ("Ambiguity is not created merely because the litigants disagree about the meaning of a contract.").  "[U]nder Massachusetts law, interpretation of a contract is ordinarily a question of law for the court[.]"  Bank v. Int'l Bus. Machs. Corp., 145 F.3d 420, 424 (1st Cir.1998) (internal quotation marks and citation omitted).  For the reasons detailed herein, this court concludes that the termination for cause provision of the MPSA remains in effect and is incorporated by reference into the SOW.

Where, as here, a contract is unambiguous, the contract is to be interpreted "according to its plain terms." Den Norske Bank AS v. First Nat. Bank of Boston, 75 F.3d 49, 52 (1st Cir. 1996). In so doing, "[w]herever practicable" the court should "interpret a contract so that every word is given effect." DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 804, 985 N.E.2d 1187, 1195 (2013). Significantly, however, the contract must be considered "as a whole" and "[i]ts meaning cannot be delineated by isolating words and interpreting them as though they stood alone." Farmers Ins. Exchange v. RNK, Inc., 632 F.3d 777, 785 (1st Cir. 2011) (internal quotation omitted). "Not only must due weight be accorded to the immediate context, but no part of the contract is to be disregarded." Id. (internal quotation omitted).

Contract interpretation "depends heavily on context" and proceeds on the presumption that "the parties were trying to accomplish something rational." McAdams v. Massachusetts Mut. Life Ins. Co., 391 F.3d 287, 299 (1st Cir. 2004); Fishman v. LaSalle Nat. Bank, 247 F.3d 300, 302 (1st Cir. 2001). "[C]ommon sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." Teragram Corp. v. Marketwatch.com, Inc., 444 F.3d 1, 9 (1st Cir. 2006). Thus, a contract should be interpreted in a manner that avoids absurd results and "give[s] it effect as a rational business instrument." Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P., 479 Mass. 741, 751, 99 N.E.3d 744, 754 (2018) (internal quotation omitted).

Applying these principles to the instant case compels the conclusion that either party may terminate the SOW for cause.

B. <u>**Contract Interpretation**</u>

The reading of these unambiguous agreements together mandates the conclusion that SOW § 20.2.1(a) supersedes only MPSA § 13(c), the MPSA's parallel termination for convenience provision. MPSA § 13(d), providing for termination for cause, remains in effect.

As an initial matter, it is clear that the MPSA and the SOW are intended to be read together, and that together the agreements constitute the parties' contract. Not only is this expressly stated in the MPSA (<u>see</u> MPSA at Cover Sheet and §§ 15(c), 2(b)) but also the SOW itself expressly incorporates the terms of the MPSA dated February 14, 2004. <u>See</u> SOW § 1. Thus, to the extent the SOW is silent on a point (for example, choice of law, record keeping obligations or the like), the provisions of the MPSA clearly control.

With respect to termination in particular, it is expressly recognized in the MPSA that its termination provisions apply to a SOW. Thus, the MPSA provides that each SOW will remain in effect until the work provided for thereunder is completed "or the Statement of Work is terminated earlier as provided in this Agreement." MPSA § 13(b). This is a clear recognition that the early termination provisions of the MPSA are incorporated into each SOW. Similarly, both the "for cause" and "without cause" provisions of the MPSA expressly recognize that they are to be read in conjunction with the SOW. For example, with respect to termination for convenience, the MPSA expressly recognizes that while it applies to a SOW, the number of days for termination and payment obligations thereunder may be modified by the SOW. MPSA § 13(c). That is precisely what happened in the SOW in question here – the notice period was extended from 45 to 90 days and the milestones were defined. <u>Compare</u> <u>id.</u> with SOW § 20.2.1. Similarly, with respect to termination for cause, the MPSA recognizes that the stated cure

period can be modified in a specific SOW.  MPSA § 13(d)(iv).  The provision expressly recognizes that it covers a material breach of either the MPSA or the SOW.  Id.  The fact that there is no mention of a termination for cause in the SOW at issue in this case simply means that the MPSA's termination for cause provision was not modified.  It does not mean that it was eliminated.  Reading the contracts as a whole, the only logical conclusion is that the MPSA's termination provisions apply to the SOW unless expressly modified therein.

Wipro relies on § 15(b) of the MPSA, which provides that "in the event of any conflict between [the MPSA] and a [SOW], the provisions of the [SOW] will prevail" in support of its contention that the termination for cause provision of the MPSA was not incorporated into the SOW.  This argument is unpersuasive.  There is no conflict where, as here, the SOW is silent on a term that is found in the MPSA.  See Curran v. Kemper Nat. Servs., Inc., No. 04-14097, 2005 WL 894840, at *4 (11th Cir. Mar. 16, 2005) (citing Jensen v. SIPCO, Inc., 38 F.3d 945, 952 (8th Cir.1994) for the proposition that "specific language in one . . . document and silence in another does not create a conflict between the two").  This conclusion is especially warranted here, where the terms of the MPSA are expressly incorporated into the SOW, and the MPSA expressly itemizes those aspects of the termination provisions which may be adjusted by agreement in a SOW.  The only logical reading is that if a provision of the MPSA has not been modified, it remains in effect.

Wipro also relies on language in the SOW providing that "[t]he termination provisions of this SOW overrule any other section in this SOW or Agreement."  SOW § 20.2.1.  Obviously that does not literally mean "any other section" – otherwise there would be no provisions except for termination.  The only logical reading of this is that the SOW provision overrules a comparable

[10]

provision in the SOW or the MPSA.  Since the SOW termination provision expressly addresses only ADI's right to terminate "for convenience," it only supersedes the MPSA's comparable section providing for ADI's right to terminate "without cause."

This inevitable conclusion is further evidenced by the language of the SOW itself.  Wipro contends that it is entitled to milestone payments because ADI cannot terminate their contractual arrangement with cause, and the convenience termination provisions require such payments.  However, the convenience termination section under the SOW itself recognizes that such milestone payments would be required only if the failure to complete the project was "due to a cause not attributable to Wipro[.]"  SOW § 20.2.1 (example).  Consequently, if Wipro caused the project's failure (*i.e.*, was in material breach) it is not entitled to milestone payments under the express terms of the SOW.  Although the SOW only addresses a termination for convenience, it is entirely consistent with the MPSA's termination provisions addressing both for cause and convenience terminations.  There is no merit to Wipro's contention that it is entitled to milestone payments even if it is in material breach of the SOW.

Finally, Wipro argues that the parties may only terminate the MPSA, and not the SOW, under the "for cause" language of MPSA § 13(d), which provides that "[e]ither party may terminate *this Agreement* upon notice" and then lists the reasons, including (i) bankruptcy; (ii) insolvency; (iii) conduct that is injurious to the interests or reputation of the terminating party; and (iv) if "the other Party commits a material breach of the Agreement or Statement of Work and fails to cure such default to the non-defaulting Party's reasonable satisfaction within thirty (30) days after receipt of notice."  MPSA § 13(d). Reading the provision in its entirety, a logical interpretation is that since the first three "cause" factors may not relate specifically to a SOW,

the parties were making it clear that the MPSA could be terminated even in the absence of a SOW.  The material breach provision, however, expressly references the SOW and a cure period for the SOW.  Therefore, it makes no sense that the parties would not be able to terminate the SOW in the absence of a cure, especially in a case where the MPSA covers several SOWs with the same party.  Notably, the material breach provision also states that "[f]or the avoidance of doubt, non or late payment of fees which are not subject to a bona fide dispute shall constitute a material breach *of this Agreement*."  MPSA § 13(d)(iv) (emphasis added).  Since payment obligations are found in the SOW, and not in the MPSA, it seems clear that the reference to "Agreement" in this provision includes the SOW.

In any event, it is not necessary to address all the possible situations to which this provision may apply.  Wipro's argument is premised on its contention that the MPSA "states that where the parties enter into a Statement of Work, such Statement of Work 'shall constitute a separate contract.'"  Pl. Opp. (Docket No. 49) at 7, citing MPSA Cover Sheet.  In fact, the MPSA provides that the SOW "together with the terms of" the MPSA "constitute a separate contract[.]"  MPSA Cover Sheet.  The terms of the MPSA are incorporated into the SOW.  SOW § 1.  Under these circumstances, terminating the MPSA would result in the termination of the SOW.[3]

ADI argues that not recognizing a termination for cause is illogical, especially since under the MPSA Wipro then would have no right to terminate the parties' contractual arrangements,

---

[3] This conclusion is also implicitly recognized in MPSA § 13(b), which provides that "termination of this Agreement *due to non-renewal by Service Provider* will not affect any uncompleted Statement of Work, which will remain in effect under the terms of this Agreement until completed or terminated by Analog." (emphasis added).  Implicit in this provision is that termination of this Agreement for other reasons would result in the termination of a Statement of Work.  See also MPSA § 13(f) (identifying terms of the MPSA that survive termination).

a result that is inconsistent with the "well-established" common law principle "that a material breach by one party excuses the other party from further performance under the contract." Gould v. Bank of New York Mellon, 123 F. Supp. 3d 197, 204 (D. Mass. 2015) (internal quotation omitted). Thus, ADI argues, "[u]nder Massachusetts law, if a contract does not specify that the remedies identified are exclusive, or that they abrogate the common law remedies available, the common law remedies still apply." ADI Reply Mem. (Docket No. 56) at 6, quoting U.S. Steel v. M. DeMatteo Const. Co., 315 F.3d 43, 49 (1st Cir. 2002). Wipro responds that it was free to voluntarily agree to terms that are "neither absurd nor unusual" in the IT field, and which require it to complete performance regardless of the circumstances, and then sue for breach. Pl. Opp. (Docket No. 49) at 12-13. While this court questions whether this would be Wipro's position if ADI had become insolvent in the midst of the SOW, the court does not need to reach this issue. For all the reasons detailed above, this court finds that the clear and unambiguous language of the parties' agreements provides that the MPSA termination for cause provision survived the execution of the SOW and is incorporated in the SOW.

## IV.  CONCLUSION

For all the reasons detailed herein, "Analog Devices, Inc.'s Motion for Partial Summary Judgment Concerning Contract Interpretation" (Docket No. 40) is ALLOWED. The agreements at issue allow either party to terminate upon a material breach.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge